## MATTER OF KOLK

### In Deportation Proceedings

#### A-3987977

*Decided by Board April 2, 1965*

A lawful permanent resident, who, following a brief, casual visit of 4 or 5 hours in Mexico, reentered the United States upon a false claim of citizenship thereby avoiding inspection as an alien, made an entry under section 101(a)(13), Immigration and Nationality Act, upon which to predicate a ground of deportation. [*Rosenberg* v. *Fleuti*, 374 U.S. 449, inapplicable.]

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection.

The respondent, a native and citizen of the Netherlands, male, 46 years of age, has been found deportable as an alien who entered the United States without inspection (section 241(a)(2), Immigration and Nationality Act; 8 U.S.C. 1251(a)(2)). An application for a waiver of documents, *nunc pro tunc*, under the provisions of section 211(b), Immigration and Nationality Act was denied by an order entered by the special inquiry officer on March 30, 1962 (8 U.S.C. 1181(b)). An appeal from this order was dismissed by the Board of Immigration Appeals on July 25, 1962. The case is again before us on motion of the trial attorney to reopen the proceedings in the light of the Supreme Court's decision in the case of *Rosenberg* v. *Fleuti*[1], rendered on June 17, 1963.

The respondent has resided continuously in the United States since his admission for permanent residence at the port of New York on March 29, 1930. He was 11 years of age at the time of his original entry. The respondent testified that he reentered the United States at Reynosa, Texas, some time in 1959 by falsely claiming to be a citizen of the United States thereby avoiding inspection as an alien (pp. 10 & 11). The respondent last entered the United States

[1] 374 U.S. 449; 10 L. ed. 2d 1000.

through the port of Hidalgo, Texas, on or about July 30, 1960. He testified that he returned to the United States with a group ... . "we stopped at the bridge at Hidalgo, Texas, and the inspector asked us if we were all United States citizens and I nodded my head, yes" (p. 2 of Ex. 2). According to the record the respondent was in Mexico for only four or five hours on each occasion.

The issue presented by the trial attorney's motion is whether the respondent's return to the United States after the two brief casual visits to a border town in Mexico subjected him to the consequences of an "entry" into the United States in light of the *Fleuti* decision *(supra)*. The *Fleuti* case concerns an alien who was originally admitted to the United States for permanent residence in 1952 and had resided here continuously except for a brief visit of about a couple of hours in Mexico in 1956. He was ordered deported on the ground that at the time of his 1956 return he was excludable under section 212(a)(4) of the Immigration and Nationality Act as an alien "afflicted with psychopathic personality." The Supreme Court held that under section 101(a)(13) of the Act[2] an innocent, casual and brief excursion by a resident alien outside the borders of the United States may not have been "intended" as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an "entry" into the United States on his return.

We are of the opinion that a reopening of the proceedings for the purpose of reconsidering our decision of July 25, 1962 in light of the Supreme Court's ruling in the *Fleuti* case *(supra)*, decided some 11 months later on June 17, 1963, would serve no useful purpose because *Fleuti* does not apply to an alien who enters the United States without inspection. The immigration laws have provided for the inspection of aliens entering the United States since the Act of March 3, 1875 (18 Stat. 477). Section 235 of the Immigration and Nationality Act provides, *inter alia*, that "all aliens arriving at ports of the United States shall be examined by one or more immigration officers at the discretion of the Attorney General and under such regulations as he may prescribe" (8 U.S.C. 1225). 8 CFR 235.1 sets forth in detail the requirements which must be met by an alien seeking to enter the United States regardless of the purpose for

---

[2] Section 101(a)(13) of the Immigration and Nationality Act defines the term "entry" as "any coming of an alien into the United States, from a foreign port or place ... except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purpose of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place ... was not *intended* by him ...." (Emphasis supplied.)

which he seeks to enter. Among the requirements are the following: an alien must apply in person at a place designated as a port of entry and such an alien has the burden of establishing his admissibility.

The Supreme Court in the *Fleuti* case (*supra*) concluded that it would effectuate Congressional purpose to construe the intent provision in section 101(a)(13) of the Immigration and Nationality Act (*supra*[2]) as meaning an intent to depart in a manner which can be regarded as meaningfully disruptive of the alien's permanent residence. The Court also stated that one of the factors relevant to inferring such an intent is whether the alien by leaving the United States "accomplish(ed) some object which is itself contrary to some policy reflected in our immigration laws." It was the opinion of the Court that if this be the case "the interruption of residence thereby occurring would properly be regarded as meaningful" (374 U.S. at p. 462; 10 L. ed. 2d 1009).

There is no question but that the respondent intended to resume his residence when he reentered the United States in 1959 and 1960. However, this intent in and of itself does not preserve to the alien the right to return to the United States in a manner which is contrary to the immigration laws, *viz.*, knowingly evading inspection. The respondent by claiming to be a citizen avoided the inspection process. Such action is contrary to a policy which has been reflected in our immigration laws since 1875. If the immigration laws and the established techniques of inspection are to have any meaningful and rational application it must be held that the respondent made an entry from a foreign port or country under section 101(a)(13) of the Immigration and Nationality Act (*supra*[2]) when he returned from Mexico in 1959 and 1960. We conclude that the case of *Rosenberg* v. *Fleuti* does not apply where a resident alien is charged with entry without inspection following a casual visit to a foreign country. The motion will be denied.

ORDER: It is directed that the motion be and the same is hereby denied.