## MATTER OF DUARTE

### In Exclusion Proceedings

### A-19078551

*Decided by Board November 1, 1982*

(1) The United States domicile of one who retains his lawful permanent resident status must be considered lawful.

(2) The lawful permanent resident status of an alien is terminated as a result of his commission of an excludable act or the occurrence of an excludable event only upon the entry of a final administrative order of exclusion and deportation. *Matter of Lok*, 18 I&N Dec. 101 (BIA 1981), followed.

(3) An alien who enters the United States while in an excludable class prior to accruing 7 years as a lawful permanent resident does not thereby lose his lawful status nor his eligibility for relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. 1182(c). *Matter of M-*, 7 I&N Dec. 140 (BIA 1956), overruled. Dicta in *Matter of Hinojosa*, 17 I&N Dec. 34 (BIA 1979) and 17 I&N Dec. 322 (BIA 1980), superseded.

EXCLUDABLE:
　　Act of 1952—Sec. 212(a)(23) [8 U.S.C. 1182(a)(23)]—Convicted of violation of a law relating to the illicit possession with intent to distribute marijuana

ON BEHALF OF APPLICANT:　　　　　　　ON BEHALF OF SERVICE:
　Frederick Hetter, Esquire　　　　　　　Harold J. Neubauer
　2220 Fifth Avenue　　　　　　　　　　General Attorney
　San Diego, California 92101

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

In a decision dated April 15, 1981, an immigration judge found the applicant excludable under section 212(a)(23) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(23), denied as a matter of law his application for relief under section 212(c) of the Act, 8 U.S.C. 1182(c), and ordered him excluded and deported from the United States. The applicant has appealed from that decision.

The applicant, a 32-year-old native and citizen of Mexico, was admitted to the United States for lawful permanent residence on July 25, 1969. In the spring of 1970, he returned to Mexico where he resided until August 1974, crossing the border regularly to work in this country as a migrant farm worker. The applicant married a Mexican citizen in 1971 and has two sons by that marriage who are also citizens of Mexico.

The applicant's wife and children never immigrated to the United States.

On August 14, 1974, approximately 79 pounds of marijuana were discovered in the applicant's automobile as he sought to reenter the United States. He was paroled into the United States for prosecution and on November 4, 1974, was convicted of a violation of 21 U.S.C. 841(a)(1), to wit, possession of a controlled substance with intent to distribute. The applicant was sentenced to serve 120 days of a 3-year term of imprisonment pursuant to that conviction, the balance of the term suspended with probation conditioned upon his returning forthwith to Mexico and not entering the United States without permission. Upon his release from confinement, the applicant was met by officers of the Immigration and Naturalization Service who returned him to Mexico without instituting exclusion proceedings.

According to his testimony, the applicant returned to the United States in January 1975, entering without inspection, and remained in this country to the time of his exclusion hearing. He visited Mexico about four times a year, reentering the United States without inspection on each occasion. In December 1979, after his criminal probation had expired, the applicant applied for admission to the United States. These exclusion proceedings ensued.[1] On appeal, the applicant does not challenge the immigration judge's finding of excludability but appeals solely from the denial of section 212(c) relief.

Section 212(c) of the Act provides in pertinent part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraph (1) through (25) and paragraphs (30) and (31) of subsection (a). . . .

The immigration judge found that the applicant had lost his lawful permanent resident status prior to the hearing and, hence, could not establish statutory eligibility for section 212(c) relief. He cited alternative rationales for his holding: (1) that the applicant's lawful permanent resident status ended when he entered without inspection (*see Matter of M-*, 5 I&N Dec. 642 (BIA 1954)) and (2) that such status terminated when the applicant departed and reentered the United States within the first 7 years of acquiring lawful permanent residence subsequent to an

---

[1] We find this case distinguishable from the Ninth Circuit's decision in *Plasencia v. Sureck*, 637 F.2d 1286 (9 Cir. 1980), and therefore conclude that the applicant was properly placed in exclusion, not deportation, proceedings. The court in *Plasencia* held that where there is a question as to whether the visit abroad of a lawful permanent resident was "meaningfully interruptive" of the alien's United States residence so as to subject him to the consequences of an "entry," the issues of "entry" and excludability must be litigated in deportation proceedings. In the present case, however, the applicant's criminal conviction for trafficking in marijuana conclusively resolves that question against him. *See Matter of Contreras*, 18 I&N Dec. 30 (BIA 1981).

act or event that rendered him excludable (*see Matter of M-*, 7 I&N Dec. 140 (BIA 1956); *Matter of Hinojosa*, 17 I&N Dec. 34 (BIA 1979) and 17 I&N Dec. 322 (BIA 1980)).

In a recently published case, *Matter of Gunaydin*, 18 I&N Dec. 326 (BIA 1982), we retreated from our decision in *Matter of M-*, 5 I&N Dec. 642 (BIA 1954), to the extent that decision has been understood to hold that an entry without inspection automatically terminates an alien's lawful permanent resident status. We found that proposition inconsistent with and superseded by subsequent Board precedents which held that an act or event which provides a basis for an alien's deportation does not in itself terminate his lawful permanent resident status but, rather, that such status ends as a result of his commission of a deportable offense only upon the entry of a final administrative order of deportation. *See Matter of Lok*, 18 I&N Dec. 101 (BIA 1981), *aff'd, Lok v. INS*, 681 F.2d 107 (2 Cir. 1982); *Matter of Gunaydin, supra*.

We turn now to the alternative basis for the immigration judge's decision. *Matter of Hinojosa*, 17 I&N Dec. 34 (BIA 1979) and 17 I&N Dec. 322 (BIA 1980), the only precedent decisions which discussed *Matter of M-*, 7 I&N Dec. 140 (BIA 1956), in its 26-year history, distinguished the case on the facts. The holding in *Matter of M-, id.*, is now squarely before us. As we find the present *Matter of M-*, like the Volume 5 case of the same name, incompatible with subsequent case law, we shall withdraw from our holding therein and from the dicta in *Matter of Hinojosa, supra*.

In *Matter of M-*, the Board held that a lawful permanent resident who departed and reentered the United States while in the state of being inadmissible had no "lawful domicile" in this country from the date of that entry and could not thereafter accumulate time toward the satisfaction of the 7-year "lawful unrelinquished domicile" requirement of section 212(c). Thus, an alien who had not completed 7 years as a lawful permanent resident at the time of an entry made subsequent to an act or event giving rise to excludability, and hence could not qualify for a section 212(c) waiver at the time of such entry, was forever barred from establishing eligibility for relief under section 212(c). That result followed notwithstanding the fact that there had been no adjudication of the alien's excludability until after the 7-year period had elapsed.

In *Matter of Lok, supra*, the Board observed that the United States domicile of one who retains his lawful permanent resident status must be considered lawful.[2] We then proceeded to consider the point in the

---

[2] It is, of course, possible for a lawful permanent resident, *e.g.*, a commuter, to have a domicile in another country. *See Matter of Carrasco*, 16 I&N Dec. 195 (BIA 1977), *aff'd sub nom. Carrasco-Favela v. INS*, 563 F.2d 1220 (5 Cir. 1977). If he is domiciled in the United States, however, his domicile is lawful so long as he retains his lawful permanent resident status.

deportation proceedings at which the status of an alien lawfully admitted for permanent residence comes to an end by reason of the act or event that rendered him deportable. We concluded that the alien retains his lawful status until a final administrative order of deportation has been entered in his case. The rule in *Lok*, announced in the context of deportation proceedings, applies as well to an alien in exclusion proceedings. As the applicant in the instant case is not now under a final administrative order of exclusion and deportation and does not appear to have been otherwise divested of his lawful permanent resident status,[3] we find that such status continues to exist to the present time, as does the lawfulness of his domicile if he in fact is domiciled in the United States. Our contrary holding in *Matter of M-*, *i.e.*, that an alien who enters while in an excludable class prior to accruing 7 years of lawful permanent residence thereby loses his lawful status and his eligibility for section 212(c) relief, is herewith overruled.

We note parenthetically the critical significance *Matter of M-* attached to an "entry." Such emphasis on the comings and goings of a lawful permanent resident would appear inappropriate in light of *Francis* v. *INS*, 532 F.2d 268 (2 Cir. 1976),[4] a decision adopted by the Board in *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976). *See Matter of Hinojosa*, 17 I&N Dec. 322, 324 (BIA 1980).

Deciding that the applicant retains his lawful permanent resident status and thus is not precluded by its termination from establishing statutory eligibility for a section 212(c) waiver does not dispose of the case. A question remains whether the applicant was domiciled in the United States for the requisite period. It is clear that the applicant was a commuter prior to his arrest in August 1974 and that his domicile until that time was in Mexico, not the United States. *See generally Matter of Sanchez*, 17 I&N Dec. 218 (BIA 1980); *Matter of Hoffman-Arvayo*, 13 I&N Dec. 750 (BIA 1971). The location of his domicile since his reentry in January 1975 is not, however, discernible from the record presently before us. Inasmuch as we conclude that a favorable exercise of discretion is not warranted in this case, it will not be necessary to remand the record for further development of the question. *See generally INS* v. *Bagamasbad*, 429 U.S. 24 (1976).

[3] Lawful permanent resident status may also be lost through abandonment, intentional or unintentional; rescission of adjustment of status; adjustment to nonimmigrant status; or the alien's departure from the United States under an order of deportation or an order of exclusion and deportation. *Matter of Lok, supra,* at n. 8.

[4] Section 212(c) by its terms applies only to excludable aliens seeking to enter the United States. However, the court in *Francis, supra,* finding no rational basis for drawing a distinction between an alien who departed and returned and an alien who remained in this country following the act or event giving rise to deportability, held that section 212(c) relief cannot constitutionally be denied an alien solely because he had not departed the United States and hence had made no reentry after becoming deportable.

We regard the applicant's crime, which involved trafficking in a large quantity of marijuana, to be an extremely serious negative factor that has not been overcome by a showing of unusual or outstanding countervailing equities. *See generally Matter of Marin,* 16 I&N Dec. 581 (BIA 1978). The presence in the United States of the applicant's mother and brother is not in itself sufficient to outweigh the serious adverse factor militating against a grant of relief. The applicant has failed to demonstrate any other substantial equities. His wife and children reside in Mexico. The applicant himself has spent a considerable amount of time in his native country since his admission to the United States.

An applicant for relief under section 212(c) bears the burden of establishing that his application merits favorable consideration. *Matter of Marin, supra.* As we find that the applicant has not successfully met that burden, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.